# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| GINA MANHART, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>MADISON MEMORIAL HOSPITAL, a hospital owned and operated by Madison County, Idaho,<br><br>    Defendant. | Case No.: 4:11-cv-00265-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 22)** |

Currently pending before the Court is Defendant's Second Motion for Summary Judgment (Docket No. 22). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

Plaintiff Gina Manhart ("Manhart") worked at Defendant Madison Memorial Hospital ("Madison Memorial") as a nurse from September 2003 until she voluntarily resigned in May 2007. This lawsuit relates to her unsuccessful attempt to be re-hired in 2009.

Manhart says that on or around November 2, 2009, the North Fork Surgery Center (then in the process of being acquired by Madison Memorial) asked if she was interested in working there as a nurse. Manhart says she contacted Madison Memorial to follow up on the offer and learned that a "no re-hire" notation had been placed in her personnel file based on excessive absenteeism while pregnant during her previous employment with Madison Memorial. Manhart did not get the job. She claims that "[t]he decision to place her on the "no re-hire" status was

**MEMORANDUM DECISION AND ORDER - 1**

clearly related to her pregnancies as was the decision to not hire her for the vacant position in contravention of State and Federal law." *See* Compl. at ¶ 15 (Docket No. 1).

Manhart sued Madison Memorial, asserting the following causes of action: (1) gender discrimination in violation of Title VII of the Civil Rights Act; (2) gender discrimination in violation of the Idaho Human Rights Act; (3) retaliation in violation of Title VII of the Civil Rights Act; (4) retaliation in violation of the Idaho Human Rights Act; (5) intentional infliction of emotional distress; and (6) negligent infliction of emotional distress. *See id*. at ¶¶ 16-35.

On January 24, 2012, this Court granted, in part, Madison Memorial's first motion for summary judgment and dismissed Manhart's state law gender and retaliation claims. *See* 1/24/12 Order, pp. 1-2 (Docket No. 21).[1]  Now, through a second motion for summary judgment, Madison Memorial seeks to dismiss Manhart's remaining claims.

## II. DISCUSSION

### A.     Motion for Summary Judgment: Standard of Review

Summary judgment is used "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986).  It is "not a disfavored procedural shortcut," but rather is "the principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

---

[1]  The undersigned denied Madison Memorial's first motion for summary judgment as to (1) Manhart's gender discrimination and retaliation claims under Title VII of the Civil Rights Act, finding that Manhart complied with the filing requirement of 42 U.S.C. § 2000e-5(f)(1); and (2) Manhart's intentional and/or negligent infliction of emotional distress claims, finding that there is no tie to the dismissed state law gender discrimination and retaliation claims that requires dismissal. *See* 1/24/12 Order, p. 2 (Docket No. 21).

**MEMORANDUM DECISION AND ORDER - 2**

judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

However, the evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party (*see id*. at 225) and the Court must not make credibility findings. *See id*. Direct testimony of the non-movant must be believed, however implausible. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *See Anderson*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show "by [its] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *See Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's]

**MEMORANDUM DECISION AND ORDER - 3**

attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). A statement in a brief, unsupported by the record, cannot be used to create an issue of fact. *See Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

**B.     Manhart's Gender Discrimination Claim**

Manhart argues that Madison Memorial did not re-hire her in 2009 because she is female. Under Title VII, an employer may not discriminate against an individual with respect to her privileges of employment because of her gender. *See* 42 U.S.C. § 2000e-2(a). Any such "disparate treatment" is a violation of federal law, unless a defense also recognized by law would insulate such action.

Under the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff alleging disparate treatment under Title VII must first establish a prima facie case of discrimination by offering evidence that "give[s] rise to an inference of unlawful discrimination." *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). A prima facie case may be established either by (1) providing direct evidence suggesting that the employment decision was terminated based on an impermissible criterion, or (2) the four-part test laid out in *McDonnell Douglas*.

To establish a prima facie case of gender discrimination under the *McDonnell Douglas* framework, a plaintiff must show that (1) she belongs to a protected class, (2) she was qualified for the position, (3) she was subjected to an adverse employment action, and (4) she was replaced by someone outside the protected class or that similarly-situated individuals outside of

**MEMORANDUM DECISION AND ORDER - 4**

her protected class received more favorable treatment.  *See, e.g.*, *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

Once a prima facie case has been made, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action."  *Chuang v. Univ. of Cal. Davis*, 225 F.3d 115, 1123-24 (9th Cir. 2000).  If the employer provides such a reason, the plaintiff must show that the articulated reason is pretextual "either directly by persuading the [fact-finder] that a discriminatory reason more likely motivated the employer[,] or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Burdine*, 350 U.S. at 256.  When the evidence is direct, "'[w]e require very little evidence to survive summary judgment' in a discrimination case."  *Lam v. University of Hawaii*, 40 F.3d 1551, 1564 (9th Cir. 1994) (quoting *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991)).  "But when the plaintiff relies on circumstantial evidence, that evidence must be specific and substantial to defeat the employer's motion for summary judgment."  *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005).

Here, Madison Memorial argues that Manhart cannot establish a prima facie case of gender discrimination because (1) there was no adverse employment action and (2) there is no evidence in the record of gender-based discrimination.  *See* Mem. in Supp. of MSJ, pp. 4-8 (Docket No. 22, Att. 1).  Madison Memorial argues further that, *even if* Manhart established a prima facie case of gender discrimination, a legitimate, non-discriminatory reason existed for not hiring her and, relatedly, that Manhart has not established a genuine issue of fact of pretext.  *See id*.  On this record, the Court agrees.

**MEMORANDUM DECISION AND ORDER - 5**

Preliminarily, Manhart highlights two instances supporting her gender discrimination claim: first, Madison Memorial's decision to identify her with a "no re-hire" status within her personnel file following her resignation in 2007; and, second, Madison Memorial's failure to hire her in 2009.  *See* Opp. to MSJ, p. 8 (Docket No. 23).  Manhart claims that these decisions were improperly motivated by issues relating to her pregnancy, thus providing the bases for her gender discrimination claim.

As to the discrete issue of Manhart's ability to establish a prima facie case of gender discrimination, as a woman, she belongs to a protected class.  Further, there is no evidence in the record that Manhart was unqualified to be a nurse.  In both, (1) being designated as a "no re-hire" and (2) not being hired in 2009, Plaintiff was arguably subject to at least two adverse employment actions.[2]  To the extent these actions were taken against Manhart but not other similarly-situated individuals outside of her protected class, it can be argued that such other individuals were treated more favorably.  *But see supra* at n.2.  Considering all reasonable inferences in Manhart's favor, these factors combine to establish a prima facie case for gender discrimination.

---

[2]  Madison Memorial disputes this fact, arguing that there was no employment position available at all during the time frame Manhart allegedly attempted to hire on at Madison Memorial in 2009 (thus precluding any adverse employment action) and, moreover, that any preemptive decision not to re-hire Manhart was a function of her excessive absenteeism, independent of her being pregnant.  *See* Mem. in Supp. of MSJ, pp. 4-8 (Docket No. 22, Att. 1).  While Madison Memorial's arguments in these respects are generally persuasive (particularly as the argument evolves onto the issues of Madison Memorial's burden under *McDonnell Douglas* and pretext (*see infra*)), they do not outright prevent Manhart from claiming an adverse employment action when considering that (1) there is, in fact, a notation in her personnel file that she not be re-hired, and (2) she alleges that she was offered a job in 2009 only to have it later revoked.  At best, at this stage in the litigation, Madison Memorial's arguments raise genuine disputes of material fact vis à vis any alleged adverse employment actions against Manhart.

**MEMORANDUM DECISION AND ORDER - 6**

Still, consistent with the *McDonnell Douglas* burden-shifting framework, Madison Memorial in turn offers what it contends are legitimate, non-discriminatory justifications for not re-hiring Manhart (even assuming an employment position was available to her in 2009). According to Manhart's supervisor, Jennifer Kunz, Madison Memorial decided against re-hiring Manhart for two distinct reasons.

First, in May 2007, after securing new employment with a local home health agency, Manhart stopped coming into work at Madison Memorial. *See* Mem. in Supp. of MSJ, pp. 6-7 (Docket No. 22, Att. 1); *see also* Kunz Aff. at ¶ 3 (Docket no. 22, Att. 6). Manhart neither formally communicated her resignation to Madison Memorial nor gave any notice, much less, two weeks' notice. *See id.* Instead, Madison Memorial was only made aware of Manhart's intentions when, in response to a request to cover a work shift, Manhart stated that she was "not working anymore" at Madison Memorial. *See id.* Notably, Manhart was *not* pregnant at this time.

Second, and perhaps most significantly, Manhart missed more days of work than her work requirements allowed her. As a "Licensed Practical Nurse," Manhart was required to work six shifts each month, including a requirement that 50% of those work shifts were nights and 25% were weekends. *See* Mem. in Supp. of MSJ, p. 6 (Docket No. 22, Att. 1); *see also* Kunz Aff. at ¶ 5 (Docket No. 22, Att. 6). However, during Manhart's last ten months of work at Madison Memorial, she only worked a total of 20 shifts – on average, about two shifts per month; well below the minimum required amount. *See id.*; *see also* Ex. C to Kunz Aff. (Docket No. 22, Att. 6). Again, during this time, Manhart was *not* pregnant.

Manhart does not challenge these facts. However, in an apparent effort to show pretext, she points to a secretly-recorded conversation that she had with Ms. Kunz in November 2009

**MEMORANDUM DECISION AND ORDER - 7**

(over two years after she last worked at Madison Memorial), stating in no uncertain terms that, during this communication, "Ms. Kunz admits that this decision was entirely motivated by the Plaintiff's past pregnancies." *See* Opp. to MSJ, p. 8 (Docket No.23).  Manhart overstates the substance of her conversation with Ms. Kunz and, in doing so, undermines her argument in support of any gender discrimination claim.

Specifically, while the recording evidences the fact of Ms. Kunz having made mention of Manhart's pregnancies in relation to her absences, the entirety of the recording makes clear that Manhart's pregnancies were not the reason for Madison Memorial's decision not to re-hire Manhart.  Indeed, Manhart was not pregnant when she quit working in 2007, after which Madison Memorial decided that it would not re-hire Manhart, a fact Manhart then discovered when she sought to be re-hired in 2009.  Ms. Kunz's consistent explanation for Manhart's "no re-hire" status was squarely focused upon Manhart's significant absences from work when she was not pregnant.[3]  *See, e.g.*, 11/16/09 Mtg., pp. 11:22-23; 20:21-24 (Docket No. 24) ("No. No.

---

[3]  In this respect, Ms. Kunz contends that Manhart "was a much better employee for Madison Memorial when she was pregnant, than when she was not pregnant."  *See* Kunz Aff. at ¶ 13 (Docket No. 22, Att. 6).  According to Ms. Kunz, this was because, on two different occasions (and presumably in 2009 when, pregnant again, she sought re-employment with Madison Memorial), Manhart "was only willing to work her shifts while pregnant to take advantage of the medical benefits offered by Madison Memorial"; and "once she had a baby, she wouldn't work the shifts that she was required to work."  *See id.* at ¶¶ 8-10; *see also* 11/16/09 Mtg., p. 3:5-10 (Docket No. 24) ("You know what, I think I know what it was.  It was your absenteeism and that you only came here every time you were pregnant.  Once you had a baby, you wouldn't work.  And that's – and when I hire someone, I can't hire someone for three months, and I think that's anywhere you work.").  Manhart did not dispel this notion when, during her November 2009 conversation with Ms. Kunz, she stated: "And I'm like, you know, I – you know, I was like in school and I just had my babies, you know, *and I didn't want to work*.  And, you know, at the time I wasn't in debt for school and I didn't – you know, I didn't have to work, you know, and I still –."  *See* 11/16/09 Mtg., p. 5:15-20 (Docket No. 24) (emphasis added).

**MEMORANDUM DECISION AND ORDER - 8**

No. No.  It has everything to do with absences . . . . .  I said it didn't have anything to do with except [sic] absences.  And I said it was hard for everybody and she said okay.").  Indeed, Manhart herself acknowledged during the conversation that her excessive absenteeism was not good for her employment prospects.  *See id*. at 9:14-18 ("So I just, you know, kind of like I was telling Betty, you know, I feel bad.  I know I should have – I look back on it now and go that wasn't really good for my career to request call all the time.").

In other words, when read *in toto*, the November 2009 conversation between Manhart and Ms. Kunz supports Madison Memorial's position that Manhart brought on her own "no re-hire" status because of  her repeated and strategic absenteeism, not because she was female or because she was pregnant.  No reasonable minds could differ on that question, based on this record. Therefore, aside from obliquely disputing Madison Memorial's reasons for not hiring her, Plaintiff has failed to introduce any persuasive, material evidence from which a reasonable jury could conclude that Madison Memorial undertook the challenged employment actions due to her gender.  Simply put, her legal claim of gender discrimination requires more.  Otherwise, any adverse employment action would necessarily amount to pretext.  The law does not support such a conclusion and the undersigned declines any invitation to hold differently here. Madison Memorial's Motion for Summary Judgment is granted in this respect.

**C.**     **Manhart's Retaliation Claim**

To establish subject matter jurisdiction in a suit under Title VII, a claimant must exhaust remedies "by filing a timely charge with the [Equal Employment Opportunity Commission] [("EEOC")]."  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2004) (citing 42

**MEMORANDUM DECISION AND ORDER - 9**

U.S.C. § 2000e-5(b); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002)).  Under

Title VII, the charges must be "in writing under oath or affirmation."  42 U.S.C. § 2000e-5(b).

The purpose of this requirement is to allow the agency an opportunity to investigate the

charge(s) against it.  *See Vasquez*, 349 F.3d at 644 (citing *B.K.B.*, 276 F.3d at 1100).

Accordingly, "[s]ubject matter jurisdiction extends to all claims of discrimination that fall within

the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be

expected to grow out of the charge."  *Id*.  Madison Memorial argues that Manhart's retaliation

claim should be dismissed because Manhart failed to exhaust her administrative remedies.  *See*

Mem. in Supp. of MSJ, pp. 10-11 (Docket No. 22, Att. 1).  The Court agrees.

        Within her March 5, 2010 "Charge of Discrimination" with the EEOC, Manhart indicated

(by checking a box on the form) that the "[c]ause [o]f [d]iscrimination" was based on "sex" and

"other."  *See* Charge of Discrimination, attached as Ex. D to Hall 2nd Aff. (Docket No. 22, Att.

7).  Notably, Manhart did not indicate (by likewise checking the "retaliation" box on the form)

that her claim was premised upon retaliation theories.  *See id*.  In response, Manhart counters

that any failure to check the applicable "retaliation" box is immaterial when considering that she

described a retaliation claim within the attached March 3, 2010 letter to the Idaho Human Rights

Commission ("IHRC").  *See* Opp. to MSJ, pp. 10-11 (Docket No. 23).  Manhart's March 3, 2010

letter reads in relevant part:

> Despite that [no re-hire] status, I filled out an application and submitted it for a
> vacant nursing position.  On December 8, 2009, I was told by Madison Memorial
> that the position had been filled and was now closed.  Around this same time frame,
> I spoke to Human Resources regarding the position and my "no re-hire" status.  I was
> told that while employed, I had missed several shifts due to pregnancy.  The Human
> Resources employee then noted that I was pregnant at that time and didn't want any
> problems like there were before.  She went on to note that the hospital has all kinds
> of problems filling in shifts for women that are pregnant.

**MEMORANDUM DECISION AND ORDER - 10**

> The basis of my claim is that I was put on a no re-hire status due to previous pregnancies. The ultimate discriminatory act that took place was in December 2009 when the hospital refused to hire me due to my past and present pregnancies.

*See id.*

However, Manhart does not cite to any particular language within the March 3, 2010 letter that she claims amounts to a description of the alleged retaliation. The Court's own review reveals that, in fact, no such claim is alleged, other than the already-discussed, underlying gender discrimination claim (*see supra*). The word "retaliation" was not used in the letter; there is no indication that either the IHRC or the EEOC understood Manhart's claim(s) to include a claim for retaliation (*see* IHRC Rpt. & EEOC Dismissal, attached as Exs. A & B to Hall Aff. (Docket No. 14, Att. 2)); and, following the IHRC's and EEOC's dismissal of her case, Manhart did not request that the agencies revisit any unaddressed retaliation claim.

Based on the foregoing, the record is simply too scant to support any argument that Manhart exhausted her administrative remedies with respect to her retaliation claim because she did not raise any such claim in any sensibly identifiable form before the respective agencies. Madison Memorial's Motion for Summary Judgment is granted in this respect.[4]

---

[4] Separately, to make out a prima facie case of retaliation in violation of Title VII, a plaintiff must show "(1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Apart from her failure to exhaust her administrative remedies, Manhart also cannot make out a prima facie case for retaliation because there is no causal connection between the claimed protected activity – "pro-creation" (*see* Opp. to MSJ, p. 10 (Docket No. 23)) – and the adverse employment action when recognizing that the decision not to re-hire Manhart in the first place occurred when she was *not* pregnant. Even so, as this Court has already found, Manhart was not re-hired because of her excessive absenteeism, not because she was pregnant. *See supra.* In resolving this issue, the undersigned does not need to consider whether the condition of pregnancy or procreation constitutes protected activity under Title VII. *See, e.g., Johnson v. Proline Concrete Tools, Inc.*, 2009 WL 1444204, *7 (E.D. Cal. 2009) (granting defendant's

**MEMORANDUM DECISION AND ORDER - 11**

**D.      Manhart's Intentional and Negligent Infliction of Emotional Distress Claims**

The Idaho Tort Claims Act ("ITCA") generally permits claims against government entities "for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees . . . ."  I.C. § 6-903.  However, before proceeding with such an action, the ITCA requires that "[a]ll claims against a political subdivision arising under the provisions of this act and all claims against an employee of a political subdivision . . . shall be presented to and filed with the clerk or secretary of the political subdivision."  I.C. § 6-906.

Here, Madison Memorial, as "an entity which is owned and operated by Madison County,"[5] moves to dismiss Manhart's intentional and negligent infliction of emotional distress claims because Manhart did not file a notice of her tort claim in accordance with the ITCA.  *See* Mem. in Supp. of MSJ, pp. 12-13 (Docket No. 22, Att. 1).  In response, Manhart does not dispute either that Madison Memorial is a "political subdivision" under the ITCA, or that she did not file a formal notice of her tort claims pursuant to the ITCA.  Instead, Manhart seems to argue that (1) the ITCA's notice requirements are inapplicable to her claims, and (2) her complaint with the IHRC nonetheless satisfies any notice prerequisites under the ITCA.  *See* Opp. to MSJ, p. 12 (Docket No. 23).  Manhart's arguments in these respects are without merit.

---

motion for summary judgment, holding in part:  "In other words, [Title VII and the FEHA] protect an employee who complains or otherwise seeks redress for discrimination she believes she has suffered; *a retaliation claim does not lie on the basis of the alleged discrimination alone*.") (citing *Sias v. City Demonstration Agency*, 588 F.2d 692 (9th Cir. 1978); *Fliat v. North American Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992)) (emphasis added).

[5] Idaho Code § 6-902 defines "political subdivision" to include "state licensed hospitals and attached nursing homes established by counties pursuant to chapter 36, title 31, Idaho Code, or jointly by cities and counties pursuant to chapter 37, title 31, Idaho Code."  *See* I.C. § 6-902.

**MEMORANDUM DECISION AND ORDER - 12**

First, while it is true, as Manhart contends, that "[t]he notice of claim requirements of Idaho Code § 6-905 are inapplicable to a cause of action brought under 42 U.S.C. § 1983" (*see Overman v. Klein*, 654 P.2d 888, 892 (Idaho 1982)), the at-issue claims here – intentional and negligent infliction of emotional distress – are state-law claims that exist independent of 42 U.S.C. § 1983.  Therefore, absent any federal statutory or common law right to be free from intentional and/or negligent infliction of emotional distress, *Overman* is inapplicable toward excusing Manhart's obligation to provide notice of her state-law tort claims under the ITCA.

Second, even though a complaint filed with the IHRC *may* satisfy the notice requirements of Idaho Code §§ 6-905 and 6-906 (*see infra*), Manhart's complaint to the IHRC makes no reference to any state-law claims, including intentional and negligent infliction of emotional distress.  Such issues were at play in *Johnson v. North Idaho Coll.*, 2007 WL 917379 (D. Idaho 2007), in which U.S. District Judge Edward J. Lodge addressed whether a complaint filed with the IHRC satisfies the notice requirement of the ITCA for state tort claims.  *See id.* at *2. Answering "no" to this question, Judge Lodge relied upon the Idaho Supreme Court's repeated emphasis "that compliance with the notice requirement . . . is a mandatory condition precedent to bringing an action under the [ITCA]," reasoning:

> By statute, the Idaho Human Rights Act is limited to matters that concern "discrimination because of race, color, religion, sex, or national origin . . . [and] age."  Accordingly, a provision of the Act states that the filing of a complaint with the Idaho Human Rights Commission only "satisfies the notice requirements of the [Idaho Tort Claims Act] as to the allegations of the administrative complaint arising under [the Idaho Human Rights Act]."  *This language, then, expressly limits Plaintiff's compliance with the Idaho Tort Claims Act, by the filing of her complaint with the Idaho Human Rights Commission, to the claims that allege discrimination and sexual harassment.  These claims – discrimination and sexual harassment – are the only ones asserted by Plaintiff that arise under the Idaho Human Rights Act.  The filing of a complaint with the Idaho Human Rights Commission cannot serve as a*

**MEMORANDUM DECISION AND ORDER - 13**

*substitute for filing a notice as to Plaintiff's state law tort claims because § 5907A of the Idaho Human rights Act does not permit it.*

*Id.* (emphasis added) (internal citations omitted).  Though *Johnson* is not a reported decision, and the Ninth Circuit's subsequent affirmance (*see Johnson v. North Idaho Coll.*, 2009 WL 3303714 (9th Cir. 2009)) is unpublished, this Court sees no reason to depart from the rationale contained in either decision.  With all this in mind, Manhart's intentional and negligent infliction of emotional distress claims are separately barred by the ITCA.  Madison Memorial's Motion for Summary Judgment is granted in this respect.[6]

### III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED THAT Defendant's Second Motion for Summary Judgment (Docket No. 22) is GRANTED.

DATED:  **March 14, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[6] In reaching this decision, the Court does not decide whether Manhart has sufficiently pled the elements of either an intentional infliction of emotional distress claim or a negligent infliction of emotional distress claim under Idaho law.  *See* Mem. in Supp. of MSJ, pp. 13-16 (Docket No. 22, Att. 1).

**MEMORANDUM DECISION AND ORDER - 14**